## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MANUEL J. GARCIA,

               Plaintiff,

v.                                         No. 13-CV-0234 MCA/KBM

ROBERTO J. PURDY and
LINDA PURDY,

               Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Motion to Dismiss") [Doc. 12], Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Motion to Dismiss First Amended Complaint") [Doc. 18], and Plaintiff's Motion for Leave to File a Second Amended Complaint and Memorandum of Law in Support ("Motion to File Second Amended Complaint") [Doc. 25]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Dismiss is moot and will be denied, the Motion to Dismiss First Amended Complaint is well taken and will be granted, and the Motion to File Second Amended Complaint is not well taken and will be denied.

## BACKGROUND

On March 11, 2013, Plaintiff Manuel J. Garcia ("Plaintiff") filed a Complaint for Assault, Stalking, Harassment, Nuisance(s), Trespass/Interference with Possession of Land, Conspiracy, False Imprisonment, Violation of Plaintiffs' [sic] State Constitutional Rights, Violation of

1

Religious Rights Guaranteed by the U.S./N.M. Constitution, Damages, Injunctive, and Declarative Relief, Violation of U.S. Constitutional Rights, Violation of State Statutes ("Complaint") [Doc. 1]. The Complaint alleges that Plaintiff brings suit pursuant to the jurisdictional bases set forth in 28 U.S.C. Sections 1331 and 1343.   *See* Compl. at 1-2.

On April 17, 2013, Defendants Roberto J. Purdy and Linda Purdy ("Defendants") filed the Motion to Dismiss the Complaint, arguing that it does not allege facts sufficient to support federal question jurisdiction.   On April 22, 2013, Plaintiff filed a First Amended Complaint for Violation of 5th and 14th Amendment Rights, Violation of Religious Rights Guaranteed by the U.S. Constitution, Damages, Injunctive, and Declarative Relief, Violation of U.S. Constitutional Rights, Treaty of Guadalupe Hidalgo, Conspiracy (Title 42 § 1985(2)) ("First Amended Complaint") [Doc. 15].   The First Amended Complaint omits the state law claims contained in the Complaint and attempts to cure the defects identified in the Motion to Dismiss.

The First Amended Complaint alleges three causes of action:   (1) "First Cause of Action and Claim for Relief—28 U.S.C. § 1331—Violation of the 5th and 14th Amendments to the Constitution of the United States"; (2) "Second Cause of Action and Claim for Relief—Violation of the United States Constitution, Freedom of Religion; First Amendment Right to Peaceful Assembly, Violation of the Treaty of Guadalupe Hidalgo"; and (3) "Third Cause of Action and Claim for Relief:   Conspiracy (Title 42 U.S.C. § 1983 and § 1985(2)—Depriving a persons' [sic] Federal rights or privileges—Illegal interference with the possession of land."   First Am. Compl., at 4, 8, 11.   The First Amended Complaint alleges that jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343.   *See id*. ¶¶ 22, 24, at 5.

The causes of action in the First Amended Complaint arise out of a dispute over whether Defendants wrongfully prevented Plaintiff from using a road identified as C-53-B, which is

2

located in San Miguel County and begins at the junction with County Road C-53-A and proceeds to the northwest for 3.42 miles.  *See id*. ¶¶ 12-16, at 3; *id.* ¶ 11, at 16.   A portion of the C-53-B road travels through Defendants' property, and Plaintiff asserts an easement over that portion of the road for ingress and egress to his property and to the Catholic Iglesia de Santiago Mission Church and cemetery (the latter of which are owned by the Archdiocese of Santa Fe but are open to the public).  *See id*. ¶¶ 49, 52, 58, 74, at 9, 10, 13; *see also* Exh. 11 to Pl's Mot. for Leave to File a Second Am. Compl.  Plaintiff's property and the church and cemetery lie landlocked within Defendants' property and can only be accessed from the C-53-B road.  *See id*. ¶ 26, at 6.

The First Amended Complaint alleges that Defendants have "placed many barriers and obstructions . . .  along the [C-53-B] road impeding right of way ingress and egress from the plaintiffs' [sic] property," *id*. ¶ 12, at 3, "erected a fence-line with metal T-posts to impede the right of way ingress and egress from plaintiffs' [sic] property," *id.* ¶ 13, at 3, and "tie[d] the wire gate shut with bailing wire forcing plaintiff to cut the bailing wire to regain ingress and egress to his home and property" and "interfer[ing] with the plaintiffs' right of way . . . to his home and property," *id.* ¶¶ 15, 16, at 3-4.  Plaintiff further alleges that on the weekend of March 24-25, 2012, Defendants wired the gate shut, Plaintiff called the state police, and the police warned Defendants not to block the Plaintiff's right of access.  *See id.* ¶ 18, at 4.

In addition, the First Amended Complaint alleges that "Defendants have intentionally conspired to deprive the plaintiff of a public roadway and public easement," *id.* ¶ 64, at 11, that "defendants . . . originally petitioned the County Commissioners of San Miguel County in about 1994 to vacate [the C-53-B road,]" but these efforts failed, *id.* ¶ 65, at 11, and that in September 2009, Defendants met with county officials and "unlawfully lobbied and convinced the county manager to vacate the road . . . .   Thus, the defendants as private individuals worked 'under color

3

of state law' to deprive the plaintiff of his 5th and 14th amendments—rights to ingress and egress," *id.* ¶ 67, at 11.   The First Amended Complaint also alleges that the County thereafter vacated the road.   *See id.* ¶ 53, at 9.   The First Amended Complaint further alleges that in 2009 Plaintiff "learned that there was some type of 'negotiated settlement' with the county way back in 1994 between the County of San Miguel and [Defendants]," *id.* ¶ 70, at 12, and that pursuant to this agreement the "road was not maintained or repaired," *id.* ¶ 71, at 12.   The First Amended Complaint additionally alleges that Defendants "under 'color of state law' conspired to deprive the plaintiff and his family access to the Catholic Iglesia de Santiago Mission Church . . . by installing a chain and lock on the gate on the roadway to the church," *id.* ¶ 73, at 12, and that Defendants have not allowed Plaintiff access to the cemetery around the church, *see id.* ¶¶ 51, 58, 59, at 9-10.

On May 9, 2013, Defendants filed their Motion to Dismiss First Amended Complaint. Thereafter, on July 30, 2013, Plaintiff filed his Motion to File Second Amended Complaint, and attached a copy of the proposed Second Amended Complaint for Violation of Plaintiffs' 1st, 5th and 14th Amendment Rights, Violation of Religious Rights Guaranteed by the U.S. Constitution, Damages, Injunctive, and Declarative Relief, Violation of U.S. Constitutional Rights, Federal Land Patent Statutes, Treaty Law ("Second Amended Complaint") [Doc. 25-1].   The proposed Second Amended Complaint alleges that the Court has federal question jurisdiction over the action pursuant to 28 U.S.C. Section 1331, and that the Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. Section 1343.   *See* Second Am. Compl. ¶¶ 11, 13, at 3.

In the proposed Second Amended Complaint, Plaintiff alleges the facts identified herein from the First Amended Complaint, but also adds the following additional facts relevant to the issue of state action.   First, with respect to the "negotiated deal" Defendants allegedly entered into

with the County in 1994, Plaintiff adds the allegation that "[t]he negotiated deal is state action through the county." *Id.* ¶ 30, at 6 (emphasis omitted).

Second, the proposed amendment adds allegations indicating that the County was aware that Defendants were obstructing the C-53-B road.   Plaintiff alleges that Defendants' "land-locking [of Plaintiff] is fairly attributable to the County because the County was aware that the County road was blocked." *Id.* ¶ 40, at 8 (emphasis omitted).   Moreover, "[county officials] saw the blocked county road in Sept. 2009, but yet did nothing to remove the blockages." *Id.* (emphasis omitted).

Third, the proposed Second Amended Complaint adds allegations suggesting that the County's decision to vacate the road was causally connected to Defendants' actions of obstructing Plaintiff's access to his property and the church.   Specifically, Plaintiff alleges that the actions of Defendants in obstructing the C-53-B road, because San Miguel County's decision to vacate the C-53-B road caused Defendants to believe the road reverted to their private ownership—when in fact it had not due to the fact that the County failed to follow proper procedures for vacation of a county road—and caused Defendants to believe that they could impede Plaintiff's access to his landlocked property. *See id.* ¶ 50, at 9 (alleging that "[t]he invocation by County Attorney of Statute 67-2-6 (a reverter statute) improperly and falsely told the defendants that the roadway would revert to private ownership"); *id.* ¶ 94, at 17 (alleging that "[t]he fact that San Miguel County attorney cited Statute 67-2-6 allowed the defendants to lock the gate, since they were told that the road had reverted to private ownership, when in fact it had not"); *id.* ¶ 51, at 9 (alleging that "[t]he actions of the defendants are fairly attributable to the State, since the County attorney and county manager recommended vacation of the road per state statutes 67-2-6 and 67-5-4"); *id.* ¶ 103, at 18 (alleging that "[a]fter the unlawful vacation of the road by the County in 2010, the

Defendant, Robert Purdy, assaulted and threatened the plaintiff in retaliation for the use of the road. . . .   This action by Defendant is fairly attributable to the State, because the Defendant is claiming the ownership of the C53B road, per Statute 67-2-6 (the reverter statute), and because the unlawful 'vacation' of the road, counter to State Statute 13-6-2 and common easement law"); *id.* ¶ 48, at 9 (alleging that the County's vacation of the road "gave the defendants ability and encouragement/tacit approval to" continue obstructing Plaintiff's access to his property).

The proposed Second Amended Complaint also adds the allegation that Defendants' action of barring access to the church and cemetery constitutes state action, because the County Attorney suggested in his letter dated September 22, 2010, that "'[t]he Archdiocese of Santa Fe, and persons who have over the years utilized the road to visit the church and cemetery, may also have an interest in asserting a private easement.'"   *Id.* ¶ 60, at 11 (quoting Sept. 22, 2009, Letter from Jesus L. Lopez, County Attorney, to Les Montoya, County Manager, at 2-3, attached as Exh. 11 to Second Am. Compl.).   Plaintiff alleges, "The county attorney fully knows that case law/common law provides that state roads or county roads have public easement.   The county attorney was covertly attempting to get the plaintiff, the Archdioceses [sic], and others to apply for private easements which would then by law nullify the public prescriptive easement in the area."   *Id.* Plaintiff further alleges, "[T]he county . . . intentionally significantly aided the defendants in their quest to extinguish the long standing public easement and right of way" to the church and cemetery.   *Id.* ¶ 79, at 14.   Plaintiff also alleges that the Defendants' acts of locking and chaining access to the public road to the catholic church constituted state action because San Miguel county "improperly vacated the road," *id.* ¶ 61, at 11, and "[t]he improper, unlawful, county resolution to vacate the road, gave the defendants ability to place a chain and lock in the roadway to the Iglesia [church]."   *Id.* ¶ 63, at 11.

6

In addition, the proposed Second Amended Complaint adds new counts against Defendants premised upon Defendants' filing of their May 20, 2013, Application for Restraining Order against Plaintiff in the First Judicial District Court, State of New Mexico.  *See id.* ¶¶ 111-23; *id.*, Exh. 14.   The Application for Restraining Order requests that Plaintiff not "threaten, harm, alarm or annoy" Defendants, that he maintain physical distance from and not contact Defendants, and that he "STOP causing harm to us, frivolous suits, trespassing, personal property damage, stop video surveillance."  *Id.*, Exh. 14.   Plaintiff alleges that "defendants' actions to file a request . . . infringe upon [his] civil rights, [and] violate plaintiffs' rights under . . . Sections 1983 and 1985."  *Id.* ¶¶ 113, at 19.

In addition, Plaintiff alleges that "[t]he TRO should not have been granted," because "no relevant evidence was presented" and "[o]n the face of the application was request to violate the plaintiffs' [sic] civil rights!"  *Id.* ¶ 116, at 19.   Plaintiff further alleges, "The restraining order was granted under the finding '. . . to define the use of two roadways related to the parties' . . . [y]et, there was no request by the petitioners Roberto and Linda Purdy to define use of the roads in their application for TRO.   These are still public roads."  *Id.* ¶ 117, at 20.   Plaintiff also alleges that the "TRO was granted without bond," *id.* ¶ 135, at 22 (emphasis omitted), and that the "Order as written allows [Plaintiff] to drive to the church, but 'cannot enter any property touching the roadway except his own property[ and t]hus . . . denies [Plaintiff] parking access to the church . . . and access[ to the] cemetery" and has "forced [Plaintiff] to resign as Mayordomo [of the church]," again affecting plaintiffs' [sic] right to freedom of religion, association, and assembly," *id.* ¶ 137, at 22.   Plaintiff further alleges that the "Order allows the petitioners to install a chain and lock on the wire gate across the State Road," which "causes safety and ingress and egress problems to the plaintiff."  *Id.* ¶ 138, at 22.

Plaintiff also alleges that Defendants obtained the TRO by "using false testimony and the defendants thus acted under 'color of state law' and influenced a State District Judge to infringe on [Plaintiff's] civil rights." *Id.* ¶ 139, at 23 (emphasis omitted).   Plaintiff alleges that the "acts of the defendants in conjunction with the state are the proximate cause of the damages to the plaintiff." *Id.* ¶¶ 120, 127, 148, at 20, 23.   Plaintiff also alleges that "defendants have received significant aid from the state," *id.* ¶ 145, at 23, and that the "symbiotic relationship, close nexus, and joint participation with the state aided the defendants," *id.* ¶ 146, at 23.

## **STANDARD**

I.   <u>Federal Question Jurisdiction</u>.

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks omitted).  "The presence of a federal issue" in a case is not sufficient to confer federal question jurisdiction, *id.* at 1235; rather, the federal issue must be one that is "actually disputed and substantial."  *Id.* at 1236 (internal quotation marks omitted).

II.   <u>Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)</u>.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

Whenever it appears that a court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action. *See Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842,

844 (10th Cir. 1988) (citation omitted), *cert. denied*, 489 U.S. 1080 (1989). "The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." *U.S. ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995). In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, *see Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, *see United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, *see Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). On a jurisdictional motion, a court may also look at documents and evidence not contained in the pleadings. *See Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003) (stating that "when a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts'") (quoting *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995)), *cert. denied*, 542 U.S. 937 (2004).

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See id.* at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted).

The court construes a *pro se* plaintiff's pleadings liberally and holds the pleadings to a less

stringent standard than formal pleadings drafted by lawyers.  *See McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001).   While a district court may make some allowances where a *pro se* plaintiff fails to cite proper legal authority, confuses various legal theories, uses poor syntax and sentence construction, and is unfamiliar with pleading requirements, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).   In the Tenth Circuit, "dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (internal quotation marks and citation omitted).

III.   <u>Motion to Amend a Pleading</u>.

Rule 15(a)(2) provides that after a party has amended its pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).   The rule instructs that a "court should freely give leave when justice so requires."  *Id.*   Our Tenth Circuit has emphasized that "[t]he purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citation and internal quotations omitted).   "The grant of leave to amend the pleadings . . . is within the discretion of the trial court."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *accord Minter*, 451 F.3d at 1204 (quoting *Zenith Radio*, 401 U.S. at 330).

A court may deny leave to amend where the proposed "amendment would be futile."  *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.*, 175 F.3d 848, 859 (10th Cir. 1999).   An amendment is "futile" if the pleading as amended would be subject to dismissal.  *See TV*

11

*Comm. Network, Inc. v. Turner Network Tel., Inc.*, 964 F.2d 1022, 1028 (10th Cir.), *cert. denied*, 506 U.S. 999 (1992).   A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, [or] bad faith or dilatory motive."   *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).   Furthermore, a court may "properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial." *Minter*, 451 F.3d at 1206 (citations omitted).

## **DISCUSSION**

I.     <u>Motion to Dismiss</u>.

Plaintiff filed his original Complaint on March 11, 2013, and Defendants responded by filing their Motion to Dismiss in lieu of an answer, arguing that the Complaint does not allege facts sufficient to support federal question jurisdiction or state a claim for relief.   Plaintiff thereafter filed a First Amended Complaint, which omitted the state law claims contained in the Complaint and added allegations aimed at curing the defects identified in the Motion to Dismiss.   Defendants responded to the First Amended Complaint by filing their Motion to Dismiss First Amended Complaint in lieu of an answer, again advancing the argument that the Court should dismiss the First Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim.

Defendants acknowledge that their "original complaint, original motion to dismiss, and response thereto essentially are moot," because the First Amended Complaint is now the operative pleading.   Mot. to Dismiss First Am. Compl., at 2 n.1.   The Court agrees.   The Court therefore denies the Motion to Dismiss the original Complaint as moot.

II.     Motion to Dismiss First Amended Complaint.

Defendants argue that the Court should dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for relief pursuant to Rule 12(b)(6).   Defendants maintain that Plaintiff cannot support subject matter jurisdiction or state a claim for relief, because Plaintiff cannot show that Defendants were acting "under color of state law" when they allegedly violated Plaintiff's constitutional rights.   Mot. to Dismiss First Am. Compl., at 6.   Defendants also argue that Plaintiff's claim premised on the Treaty of Guadalupe of Hidalgo is subject to dismissal for lack of subject matter jurisdiction, because Plaintiff's claim does not arise under federal law and therefore does not confer jurisdiction on the Court.   *See id.* at 7.

A.     Plaintiff's Section 1983 and Section 1985 Claims are Subject to Dismissal Because Plaintiff Has Not Alleged Plausible Facts Supporting State Action.

1.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

The First Amended Complaint alleges that jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343.   *See* First Am. Compl. ¶¶ 22, 24.   Section 1331 of Title 28 grants the Court federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and Section 1343 of Title 28 grants the Court subject matter jurisdiction over claims that a defendant has deprived a plaintiff of his or her civil rights "under color of any State law," 28 U.S.C. § 1343(a).   Defendants argue that Plaintiff cannot support subject matter jurisdiction under Section 1331 or 1343, because Plaintiff cannot show that Defendants were acting "under color of state law" when they allegedly violated Plaintiff's constitutional or other federally-protected rights.   Mot. to Dismiss First Am. Compl., at 6.   Defendants also argue that Plaintiff's claims are subject to dismissal for failure to state a claim

13

for the same reasons the First Amended Complaint is subject to dismissal for lack of subject matter jurisdiction.

Defendants urge the Court to grant their Motion to Dismiss First Amended Complaint on jurisdictional grounds pursuant to Rule 12(b)(1), instead of on the merits pursuant to Rule 12(b)(6).   Defendants, however, acknowledge that the Court must decide the motion pursuant to the latter rule unless Plaintiff's allegations fall within the narrow exceptions set forth in *Bell v. Hood*, 327 U.S. 678, 681-82 (1946).

In *Bell v. Hood*, the Supreme Court explained that "where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions[,] . . . must entertain the suit." 327 U.S. 678, 681-82.   The two "possible exceptions" are claims that "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction" or claims that are "wholly insubstantial and frivolous."  *Id.* at 682-83.   The Court in *Bell* held that if a district court, in exercising its jurisdiction, determines that a complaint fails to state a claim, then the district court should dismiss the case on the merits and not for lack of subject matter jurisdiction.   *See id.*

Defendants argue that the exceptions set forth in *Bell* are applicable here because Plaintiff's claims under federal law are insubstantial and frivolous.   The Court does not agree. Defendants' rest their Motion to Dismiss the First Amended Complaint on Plaintiff's failure to allege facts constituting state action, which is necessary for Plaintiff to state a *federal* Section 1983 or 1985 claim.   Defendants do not contend, nor do the facts alleged in the First Amended Complaint suggest, that Plaintiff's claims against Defendants have no basis in any law or that they are otherwise insubstantial or frivolous.   To the contrary, the Court concludes that allegations that a defendant is impeding a plaintiff's right of ingress and egress to and from his home and that a

14

defendant used false testimony to influence a state court judge to enter a decision violating a plaintiff's constitutional rights are substantial.   This conclusion is not altered by the fact that a *pro se* plaintiff might not allege facts sufficient to state a cognizable federal Section 1983 or 1985 claim against the defendant.   Thus, the exceptions set forth in *Bell v. Hood* are not applicable and the Court therefore declines to decide the motion to dismiss on jurisdictional grounds.

      2.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants also ask the Court to grant their motion to dismiss Plaintiff's Section 1983 and 1985 claims on the merits on the ground that the First Amended Complaint fails to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).   Defendants argue that Plaintiff has not stated a cognizable Section 1983 or 1985 claim for relief because he has not alleged facts establishing state action.

In order to state claims under 42 U.S.C. Sections 1983, Plaintiff may not allege simply private conduct but rather must allege plausible facts indicating that Defendants acted under color of state law.   *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (stating that Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights"); *Anderson v. Kitchen*, No. 09-4229, 2010 WL 2982930, *2 (10th Cir. July 30, 2010) (explaining that Section 1983 liability attaches only to conduct occurring under color of state law), *cert. denied*, 131 S. Ct. 1818 (2011).   Likewise, in order to state a claim under Section 1985 of Title 42, Plaintiff must also allege facts establishing state action.   *See Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009) (holding that the "[plaintiff's] § 1985 claim fails because of the absence of well-pleaded allegations that [the defendants'] alleged misconduct was state action"); *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985) (holding that "'an alleged conspiracy to infringe [constitutional] rights is not a violation of § 1985(3) unless it is proved that the state is

involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state'") (quoting *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 830 (1983)). Private conduct, no matter how discriminatory or wrongful, is beyond the reach of Sections 1983 and 1985. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (stating that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful") (internal quotation marks omitted); *accord Anderson*, 2010 WL 2982930, at *2; *see also Tilton v. Richardson*, 6 F.3d 683, 687 (10th Cir. 1993) (explaining that "§ 1985(3) is not applicable to private conspiracies that aim at rights that by definition only shield against State interference" ) (citation omitted); *Hall*, 584 F.3d at 867 (holding that the plaintiff's § 1985 claim "suffers from the same defect as [the] § 1983 claim in that § 1985(3) does not offer protection against the type of private conspiracy alleged in his complaint") (citation omitted).

"Private conduct constitutes state action, however, if it is 'fairly attributable to the State.'" *Anderson*, 2010 WL 2982930, at *2 (quoting *Lugar*, 457 U.S. at 937) (additional citation omitted). The Supreme Court in *Lugar v. Edmundson Oil Co.* held that this requirement is satisfied if two conditions are met:   (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) the private party charged with the deprivation "must be a person who may fairly be said to be a state actor.   This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."   457 U.S. 922, 937 (1982); *accord Anderson*, 2010 WL 2982930, at *2.

Defendants argue that Plaintiff's constitutional claims pursuant to Sections 1983 and 1985

16

fail because Defendants are private actors and Plaintiff has not alleged facts that satisfy either of the *Lugar* conditions to hold the state responsible for Defendants' private action.   Plaintiff alleges that Defendants and San Miguel County entered into a negotiated agreement in 1994 to stop maintaining the C-53-B road, *see* First Am. Comp. ¶¶ 70, 71, at 12, that Defendants and San Miguel County conspired in 2009 to vacate county road C-53-B, and that the county ultimately vacated the road, *see id.* ¶¶ 53, 64, 65, 67, at 9, 11.   Defendants contend that these allegations are not sufficient to satisfy the first *Lugar* requirement—*i.e.*, that the deprivation was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State.   *See Lugar*, 457 U.S. at 937.   Admittedly, Plaintiff does not allege how the 1994 negotiated agreement to stop maintaining the road or the 2009 conspiracy to vacate the road caused the deprivation of which Plaintiff complains—namely, the Defendants' actions of obstructing the C-53-B road and Plaintiff's consequent deprivation of his right to ingress and egress to and from his property and the church.   The Court, however, need not decide the issue whether the Plaintiff has satisfied the first *Lugar* requirement, because the Court holds that the First Amended Complaint fails to allege facts sufficient to establish the second *Lugar* requirement.   This holding is determinative of the motion to dismiss Plaintiff's Section 1983 and 1985 claims.

To withstand a motion to dismiss, Plaintiff must allege plausible facts that satisfy the second *Lugar* condition of demonstrating that Defendants are "person[s] who may fairly be said to be . . . state actor[s]," "because [they have] acted together with or ha[ve] obtained significant aid from state officials, or because [their] conduct is otherwise chargeable to the State."   *Lugar*, 457 U.S. at 937.   "Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, [the Tenth Circuit] ha[s] applied various analyses and referred to them as the "nexus test," the "public function test," the "symbiotic relationship test," and the "joint

17

action test." *Johnson v. Rodrigues*, 293 F.3d 1196, 1202-03 (10th Cir. 2002) (citing *Gallagher*, 49 F.3d 1442), *cert. denied*, 537 U.S. 1111 (2003).  The ultimate inquiry, however, remains whether the private party's behavior "may be fairly treated as that of the State itself."  *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001); *accord Johnson*, 293 F.3d at 1206 (citation omitted).

The public function test asks whether the State has delegated to a private party "a function traditionally exclusively reserved to the States."  *Johnson*, 293 F.3d at 1203.  Generally, this occurs when private parties perform tasks such as holding elections or other necessary municipal functions.  *See id.*  In this case, the First Amended Complaint does not allege that New Mexico delegated any function to Defendants, much less one that is traditionally exclusively reserved to the State.  As a consequence, the First Amended Complaint does not allege adequate facts to satisfy the public function test.

The nexus test requires that there be a "sufficiently close nexus" between the conduct at issue and the State, such that the conduct can be thought of as the conduct of the State itself.  *See id.*  To satisfy this test, the State must have extended such strong coercion or encouragement to the private party that the action is actually that of the State.  *See id.*  There are no allegations in the First Amended Complaint that New Mexico or any state official encouraged or coerced Defendants to take the actions of blocking Plaintiff's right to ingress or egress to and from his property and the church.  The First Amended Complaint alleges only that Defendants have conspired to deprive Plaintiff of a public roadway (but not to obstruct Plaintiff's right of access to his property or to the church), *see id.* ¶ 64, at 11, that Defendants and the County entered into a negotiated deal in 1994 pursuant to which the County would not maintain the C-53-B road, *see id.* ¶¶ 70-71, at 12, that Defendants unsuccessfully petitioned San Miguel County in 1994 to vacate

county road C-53-B, *see id.* ¶ 65, at 11, that Defendants met in September 2009 with county officials and "unlawfully lobbied and convinced the county manager to vacate the road,: *id.* ¶ 67, at 11, and that the County ultimately vacated the road, *see id.* ¶ 53, at 9.   These facts relate to vacating the county road and therefore do not establish that the County exhibited strong coercion or encouragement of Defendants' actions of *obstructing* the C-53-B road and *impeding* Plaintiff's right of access to his property or the church.   Thus, the allegations in the First Amended Complaint do not satisfy the nexus test.

The symbiotic relationship test requires a plaintiff to show that the State has entered into such a close, interdependent relationship with the defendant, *see Johnson*, 293 F.3d at 1204-05 (defining "symbiosis" as a mutually beneficial, "close union" between the State and the defendant), or that the State has "so far insinuated itself into a position of interdependence" with a private party, that the State can be considered to be a joint participant in the defendant's actions, *see Gallagher*, 49 F.3d at 1447 (citations omitted).   In this case, the First Amended Complaint does not allege facts that satisfy either of these showings.   Rather, the First Amended Complaint alleges only that Defendants lobbied and conspired with the County in 2009 to vacate a single county road that is a total of 3.42 miles in length, *see* First Am. Compl. ¶¶ 64, 65, 67, at 11; *id.* ¶ 11, at 16, and that the County and Defendants entered into a negotiated deal in 1994 pursuant to which the County stopped maintaining that 3.42 mile county road, *see id.* ¶¶ 69-71, at 12.   These isolated actions are not sufficient standing alone to create a symbiotic and interdependent relationship between Defendants and the County.   *Cf. Gallagher*, 49 F.3d at 1453 (noting that the symbiotic relationship test focuses on the long-term interdependence between the State and a private entity) (citation omitted).   Thus, the facts alleged in the First Amended Complaint do not satisfy the symbiotic relationship test.

The joint action test examines whether state officials and private parties willfully have acted in concert in effecting a particular deprivation of a plaintiff's constitutional rights. *See Gallagher*, 49 F.3d at 1453; *Wittner v. Banner Health*, Nos. 11-1171, 11-1180, 2013 WL 3156631, at *7 (10th Cir. June 24, 2013) (citing *Gallagher*, 49 F.3d at 1453). Our Tenth Circuit has explained that in applying this test, some courts have adopted the requirements for establishing a conspiracy under Section 1983 and require that both public and private actors "share a common, unconstitutional goal." *Gallagher*, 49 F.3d at 1454 (internal quotation marks and citation omitted). Other courts applying the joint action test have focused on the manner in which the alleged constitutional deprivation is effected, holding that, if there is a "'substantial degree of cooperative action' between state and private officials, or if there is 'overt and significant state participation' in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." *Id.* (quoting *Collins*, 878 F.2d at 1154; *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 967 (1992)); *see also Brophy v. Ament*, No. 07-CV-0751 JB/KBM, 2009 WL 5206041, at *12 (D.N.M. Nov. 20, 2009) (the joint action test can be satisfied where state officials "have substantially assisted in the allegedly wrongful conduct") (citation omitted).

Under either the conspiracy or the cooperation approaches to the joint action test, the First Amended Complaint is deficient. With respect to the conspiracy approach, the First Amended Complaint does not allege facts demonstrating that the Defendants and the County shared a common, unconstitutional goal of depriving Plaintiff of his constitutional right to ingress and egress to and from his property and the church.[1] *Cf. Gallagher*, 49 F.3d at 1454. Indeed, the

---

[1] Plaintiff maintains, and Defendants do not contest, that Defendants' actions of impeding Plaintiff's right of access to his property constitute a deprivation of Plaintiff's federal constitutional rights. Rather, the parties only dispute whether Defendants' conduct is fairly attributable to the State. Thus, the question whether Plaintiff has alleged facts that state a

First Amended Complaint does not contain even a conclusory allegation that Defendants and the State conspired to obstruct the C-53-B road or that Defendants and the County otherwise acted jointly to deprive Plaintiff of his right to ingress or egress.[2]  Furthermore, although the First Amended Complaint does allege that Defendants conspired with the County to vacate the county road, *see* First Am. Compl. ¶¶ 64, 65, 67, at 11, and that Defendants "under 'color of state law' conspired to deprive the plaintiff and his family access to the Catholic Iglesia de Santiago Mission Church," *id.* ¶ 73, at 12, these allegations of state action are deficient for several reasons.

First, the allegations are conclusory and unsupported by any facts establishing an agreement between Defendants and the State.  "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  *Moral v. Babcock*, No. 09-1230-EFM, 2010 WL 3199634, at *6 (D. Kan. Aug. 12, 2010) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)), *aff'd*, No. 10-3295, 2011 WL 2193374 (10th Cir. June 7, 2011).[3]  Second, the allegations of a conspiracy to vacate the C-53-B road are deficient because the mere fact that the County acted in accordance

---

[2]  deprivation of his constitutional rights is not before the Court.  Accordingly, for purposes of deciding the Motion to Dismiss First Amended Complaint, the Court assumes without deciding that Plaintiff has alleged facts that state a deprivation of his federal constitutional rights.

[2]  To the contrary, the First Amended Complaint contains allegations that support a finding that the State attempted to prevent Defendants from blocking Plaintiff's access to his property and the church.  *See* First Am. Compl. ¶ 18, at 4 (alleging that Defendants wired the gate shut on the weekend of March 24, 2012, that Plaintiff called the police, and that "the State Police warned the defendants to not block the [Plaintiff's] easement access in any way").

[3]  *See also Aly v. Rocky Mountain Holding, LLC*, No. 98-2273, 2000 WL 18878, at *4-5 (10th Cir. Jan. 12, 2000) (insisting that "there must be sufficient evidence of a conspiracy to prevent the jury from engaging in sheer speculation and conjecture"); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir.) (dismissing the plaintiff's conspiracy claim under section 1983 because it alleged "no facts establishing an agreement or meeting of the minds"), *cert. denied*, 513 U.S. 832 (1994).

with Defendants' lobbying efforts and vacated the C-53-B is not sufficient to demonstrate that

Defendants and the County cooperated or conspired to vacate the road.   *See Wideman v. Garcia*,

No. 08-CV-00966-MSK-MJW, 2009 WL 2809419, at *3 (D. Colo. Aug. 28, 2009) ("Merely

because an outcome is unfavorable to a plaintiff does not mean that the tribunal has cooperated or

conspired with the opposing party."), *aff'd*, No. 09-1433, 2010 WL 2382454 (10th Cir. June 14,

2012).   Third, the allegations of conspiracy are deficient because the conspiracy approach to the

joint action test requires a shared unconstitutional goal, *see Gallagher*, 49 F.3d at 1454 (citation

omitted), and Plaintiff cites no authority—and this Court finds none—indicating that Plaintiff had

a constitutional right, property or otherwise, to the maintenance of the road abutting his property as

a county road.[4]

The First Amended Complaint is likewise deficient under the cooperation approach to the

joint action test.   Plaintiff does not allege facts from which the Court could conclude that there

was a substantial degree of cooperative action between the State and Defendants or that the State

overtly and significantly participated in obstructing the C-53-B road.   *See id.* (citations omitted).

The only non-conclusory allegations suggesting that the State played any role in Defendants'

---

[4]   To the contrary, courts have held that members of the public do not have a property interest in
public roads, even if their land abuts the road.   *See Kinscherff v. U.S.*, 586 F.2d 159-60 (10th Cir.
1978) ("The substantive law in New Mexico for quiet title actions refutes the notion that the public
has a real property interest in public roads.").   Indeed, in another lawsuit filed by Plaintiff, the
United States District Court for the District of New Mexico dismissed Plaintiff's civil rights claims
against the Board of County Commissioners of San Miguel County arising out of the County's
action of vacating the C-53-B road, because the court concluded that Plaintiff could not establish
the first element of a due process claim—*i.e.*, that Plaintiff was deprived of a legally protected
property interest in the maintenance of the road as a county road—because members of the public
do not have a property interest in public roads, even if their land abuts the road.   *See* Order
Granting Defendant's Second Mot. to Dismiss at 2, *Manuel Garcia v. Bd. of County Comm'rs of
San Miguel County, N.M.*, No. CV-12-1127 WJ/ACT (D.N.M. Aug. 16, 2013) (Johnson, J.),
attached as Exh. 2 to Resp. to Mot. for File Second Am. Compl. (citing *Kinscherff v. U.S.*, 586 F.2d
159-60 (10th Cir. 1978)).

actions are the allegations that the County and Defendants entered into a "deal" in 1994 pursuant to which they agreed the County would not maintain the C-53-B road, *see* First Am. Comp. ¶¶ 69-71, at 12, that Defendants conspired with and lobbied the County to vacate the C-53-B road in 2009, and that the State ultimately vacated the road, *see id.* ¶¶ 53, 64, 67, at 9, 11.   These facts are not sufficient to support a substantial degree of cooperative action or overt and significant state participation in obstructing the C-53-B road.

Courts have found cooperative action and overt participation in a variety of circumstances, including where police intervention occurred at "every step" of a private party's eviction efforts, *see Gallagher*, 49 F.3d at 1454 (citation omitted), and where a state officer gave "significant aid" to a private actor, *see id.* (citation omitted).   Even if the County and Defendants reached an agreement in 1994 that the County would not maintain the C-53-B road, Defendants conspired with and lobbied the County in 2009 to vacate the road, and the County subsequently decided to vacate the road at Defendants' request, these facts do not constitute participation at "every step" of Defendants' efforts to impede Plaintiff's access to his property and the church or "significant aid" to Defendants' efforts to block Plaintiff's right of access.   *Cf. id.*   Furthermore, the Tenth Circuit has held that "the mere acquiescence of a state official in the actions of a private party is not sufficient" to establish state action.   *Anderson*, 2010 WL 2982930, at \*2 (internal quotations and citation omitted); *accord Gallagher*, 49 F.3d at 1453; *see also Wittner*, 720 F.3d at 777 ("'[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action'") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)); *Moral*, 2010 WL 3199634, at \*7 ("joint action requires more than mere acquiescence and instead requires an agreement or meeting of the minds between a private individual and state actor").   Thus, Plaintiff cannot satisfy the joint action test by virtue of the fact that the County acquiesced to Defendants' requests that the

County stop maintaining the road.

The facts alleged in the First Amended Complaint do not satisfy any of the four tests that determine whether a court may hold a private actor accountable as a state actor for constitutional deprivations.  *See Johnson*, 293 F.3d at 1202-03 (citation omitted).  The Court also concludes that the facts alleged do not otherwise demonstrate that Defendants' conduct may be fairly treated as that of the State itself.  *Cf. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (the ultimate inquiry remains whether the private party's behavior "may be fairly treated as that of the State itself"); *accord Johnson*, 293 F.3d at 1206 (citation omitted).  Plaintiff alleges no facts demonstrating that Defendants acted together with the State or that Defendants obtained significant aid from the State.  *Cf. Lugar*, 457 U.S. at 937; *Anderson*, 2010 WL 2982930, at *2.  Thus, the Court concludes that Plaintiff has failed to allege facts sufficient to establish the second *Lugar* condition that the private party charged with the deprivation "must be a person who may fairly be said to be a state actor."  *Lugar*, 457 U.S. at 937.  The Court therefore dismisses Plaintiff's Section 1983 and 1985 claims in the First Amended Complaint for failure to state a claim upon which relief can be granted.[5]

       B.      <u>Plaintiff's Claim Pursuant to the Treaty of Guadalupe Hidalgo is Subject to Dismissal Because Plaintiff Has Not Alleged Facts Demonstrating that the Court Has Federal Question Jurisdiction Over the Claim.</u>

---

[5]  In the Tenth Circuit, "dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (internal quotation marks and citation omitted).  The Court concludes that dismissal of Plaintiff's Section 1983 and 1985 claims is proper under this *pro se* modification of standard for dismissal. In his proposed Second Amended Complaint, Plaintiff attempts to amend his Section 1983 and 1985 claims by adding facts related to state action.  Plaintiff's proposed amendment, however, fails to allege facts sufficient to establish state action and therefore is futile.  *See infra* § III.A. Thus, dismissal of the Section 1983 and 1985 claims in the First Amended Complaint under the modified *pro se* standard is proper.

Defendants contend that the Court should dismiss Plaintiff's claim under the Treaty of Guadalupe Hidalgo, because the Court does not have federal question jurisdiction over the claim. *See* Mot. to Dismiss First Am. Compl., at 7.   Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."   *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks and citation omitted).   "The presence of a federal issue" in a case is not sufficient to confer federal question jurisdiction, *id.* at 1235; rather, the federal issue must be one that is "actually disputed and substantial."   *Id.* at 1236 (internal quotation marks and citation omitted).

Plaintiff's allegations in support of his claim are not sufficient to establish the presence of a federal issue that is actually disputed and substantial.   In *Vigil v. Hughes*, the Tenth Circuit affirmed the dismissal of a quiet title action in which a *pro se* plaintiff relied on the Treaty of Guadalupe Hidalgo as a basis for federal question jurisdiction.   *See* No. 12-2196, 2013 WL 426020, at *1 (10th Cir. Feb. 5, 2013).   The plaintiff alleged that he held a superior claim to land and that federal jurisdiction over the land dispute was proper because the plaintiff's claim arose out of a land grant to his grandmother under the Treaty of Guadalupe Hidalgo.   *See id.*   The district court found no federal question jurisdiction over the quiet title claim, because the action was not created by federal law and the alleged right to relief did not depend on the proper interpretation of the Treaty of Guadalupe Hidalgo, but rather depended on the strength of the deeds in the chain of title to the disputed land.   *See id.*   Our Tenth Circuit affirmed, reasoning that "[t]here is no general federal cause of action for quieting title to land.   And [the plaintiff's] 'right to relief' does

not 'depend [ ] on resolution of a substantial question of federal law.'"  *Id.* (quoting *Nicodemus*, 440 F.3d at 1232).   The Tenth Circuit explained that Plaintiff's claim raised "no need to construe the Treaty of Guadalupe Hidalgo," and therefore held that no disputed substantial federal issue existed.  *Id.*   The Tenth Circuit indicated that "[t]he only federal issue [the plaintiff] asserts . . . is that his grandmother's original claim was based on a federal treaty," and held that "this historical fact does not raise a 'federal issue . . . that is actually disputed and substantial.'"  *Id.* (quoting *Nicodemus*, 440 F.3d at 1235-36) (additional citation omitted).  Rather, the Tenth Circuit concluded that "[r]egardless of the origins of his grandmother's interest in the land, [the plaintiff's] complaint concerns only the [state law issue of the] boundaries in competing deeds."  *Id.*

This Court likewise concludes that Plaintiff's claim pursuant to the Treaty of Guadalupe Hidalgo does not raise an actually disputed and substantial question of federal law.   In support of his claim, Plaintiff alleges that by obstructing Plaintiff's right of access to the church and cemetery, Defendants have violated Plaintiff's First Amendment right to freedom of religion and assembly.  *See* First Am. Comp., ¶ 56, at 10.  Plaintiff further alleges that "Article IX of the Treaty of Guadalupe Hidalgo states:   "The Mexicans who, in the territories aforesaid, . . . shall be . . . admitted . . . to the enjoyment of all the rights of citizens of the United States . . . . and secured in the free exercise of their religion without restriction."  *Id.* ¶ 57, at 10.  Resolution of the claim whether Defendants wrongfully interfered with Plaintiff's right to assemble at the church by obstructing the C-53-B road and impeding Plaintiff's access to the church does not depend upon an interpretation of Treaty of Guadalupe Hidalgo.  Rather, Plaintiff's claim concerns only whether Plaintiff has a property interest in a right of way to access the church and whether Defendants wrongfully interfered with that property interest.   Plaintiff cannot transform his state law property claim into a federal question merely by referring to the Treaty of Guadalupe Hidalgo.

Furthermore, to the extent Plaintiff intends by quoting the Treaty to allege that his property rights arose under the Treaty, this historical fact alone does not raise a federal question.   *Cf. Vigil*, 2013 WL 426020, at *1.   To the contrary, the Court concludes that while Plaintiff's reference to the Treaty of Guadalupe Hidalgo may raise a federal issue, this issue is not sufficient to confer federal question jurisdiction, because the issue is not actually disputed and substantial.   *Cf. Nicodemus*, 440 F.3d at 1235-36; *Vigil*, 2013 WL 426020, at *1.   Thus, this Court concludes that Plaintiff's claim does not arise under federal law and therefore cannot support federal question jurisdiction. *Cf.* 28 U.S.C. § 1331.   Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim premised on the Treaty of Guadalupe Hidalgo.

III.   <u>Motion to File Second Amended Complaint</u>.

In his proposed Second Amended Complaint, Plaintiff "adds details [to the Section 1983 and 1985 claims asserted in the First Amended Complaint] to show that there was state action," Mot. to File Second Am. Compl. at 4, and adds a new count premised upon Defendants' May 20, 2013, Application for Restraining Order against Plaintiff.   *See* Second Am. Compl. ¶¶ 111-23; *id*. Exh. 14.   Defendants argue that the Court should deny the Motion to File Second Amended Complaint, because the motion is futile, and because Plaintiff seeks the amendment in bad faith for a dilatory purpose.   *See* Resp. to Mot. to File Second Am. Compl. at 6, 10.

A.   <u>Plaintiff's Proposed Amendments are Futile</u>.

Plaintiff asks the Court to grant him leave to amend his complaint and attaches a proposed Second Amended Complaint to his motion to amend.   Federal Rule of Civil Procedure 15(a)(2) governs a plaintiff's motion to amend a complaint and provides that after a party has amended its pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."   Fed. R. Civ. P. 15(a)(2).   Although Rule 15(a)(2)

27

instructs that a "court should freely give leave when justice so requires," *id.*, a court may deny leave to amend where the proposed "amendment would be futile." *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.*, 175 F.3d 848, 859 (10th Cir. 1999).   An amendment is "futile" if the pleading as amended would be subject to dismissal.  *See TV Comm. Network, Inc. v. Turner Network Tel., Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992), *cert. denied*, 506 U.S. 999 (1992).

Defendants argue, and the Court agrees, that the proposed amendment does not remedy the defects in Plaintiff's First Amended Complaint.  Thus, because the Court concludes that the pleading as amended would be subject to dismissal, the proposed amendment is futile.   The Court therefore denies Plaintiff's Motion to File Second Amended Complaint.

1.      Amendment of Claims to Support State Action.

In his proposed Second Amended Complaint, Plaintiff "adds details [to the Section 1983 and 1985 claims asserted in the First Amended Complaint] to show that there was state action." Mot. to File Second Am. Compl. at 4.  Specifically, Plaintiff alleges that the 1994 "negotiated deal" between Defendants and the County constitutes state action, *see* Second Am. Compl. ¶¶ 30, 31, that the County was aware of Defendants' actions of blocking Plaintiff's access to his property and yet did nothing to remove the blockages, *see id.* ¶ 40, that Defendants' obstruction of the C-53-B road constitutes state action because the County's decision to vacate the road caused Defendants to believe the road reverted to their private ownership and that they could impede Plaintiff's access to his landlocked property and the church, *see id.* ¶¶ 48, 50, 51, 61, 63, 94, 103, and that Defendants' action of barring access to the church and cemetery constitutes state action because the County Attorney suggested that the Archdiocese of Santa Fe and persons who have utilized the C-53-B road to visit the church may wish to assert a private easement, *see id.* ¶ 60, at 11; *id.* ¶ 79, at 14.   Defendants argue that the amended Section 1983 and 1985 claims suffer from

28

the same defects as those contained in the First Amended Complaint.   The Court agrees.

The factual allegations contained in the Second Amended Compliant, like those alleged in the First Amended Complaint, are not sufficient to satisfy the second *Lugar* condition that the private actors are "person[s] who may fairly be said to be [] state actor[s]."   *Lugar*, 457 U.S. at 937.[6]   The facts alleged in the proposed Second Amended Complaint do not satisfy any of the four tests used to determine whether a private actor may fairly be held accountable as a state actor, *see Johnson v. Rodrigues*, 293 F.3d 1196, 1202-03 (10th Cir. 2002) (citation omitted), or otherwise demonstrate that Defendants' conduct is fairly attributable to the State, *cf. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (the ultimate inquiry remains whether the private party's behavior "may be fairly treated as that of the State itself"); *accord Johnson*, 293 F.3d at 1206 (citation omitted).   Thus, the Court concludes that Plaintiff's proposed amendment of his Section 1983 and 1985 claims is futile.

More specifically, with respect to the public function test, the facts Plaintiff adds do not establish that New Mexico delegated any function to Defendants, much less one that is traditionally exclusively reserved to the State.   *Cf. Johnson*, 293 F.3d at 1203.   Likewise, with respect to the nexus test, the additions Plaintiff proposes contain no allegations that any state official encouraged or coerced Defendants to take the actions of blocking Plaintiff's right of ingress or egress to or from his property or the church.   *Cf. id*.   Moreover, with respect to the symbiotic relationship test, the amendments proposed do not suggest that the State has "so far insinuated itself into a position of interdependence" with Defendants or that there is an otherwise

---

[6]   The Court need not determine whether Plaintiff's proposed Second Amended Complaint alleges facts that satisfy the first *Lugar* condition, because the Court holds that the complaint as amended fails to satisfy the second *Lugar* condition, *cf. Lugar*, 457 U.S. at 937, and this holding is determinative.

close, mutually-beneficial, interdependent relationship between the State and Defendants. *Cf. id.* at 1204-05.

The amended allegations referencing state action likewise do not satisfy the joint action test. The joint action test examines whether state officials and private parties willfully have acted in concert in effecting a particular deprivation of the plaintiff's constitutional rights, *see Gallagher*, 49 F.3d at 1453, and may be satisfied by establishing a conspiracy whereby both public and private actors "share a common, unconstitutional goal," or by establishing that there is a "substantial degree of cooperative action between state and private officials, or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights," *id.* at 1454 (internal quotation marks and citations).

Plaintiff's proposed Second Amended Complaint adds an allegation that the 1994 "negotiated deal" pursuant to which the County stopped maintaining the C-53-B road "is state action through the county." *Id.* ¶ 30, at 6 (emphasis omitted). To the extent that Plaintiff alleges a new claim against Defendants premised not on Defendants' actions of blocking Plaintiff's access to his property but rather on Defendants' conspiracy with the County in 1994 to have the County abandon its maintenance of the road, the amendment does not satisfy the joint action test. A conclusory allegation of an agreement to engage in concerted action between the State and a private actor must be supported by facts that establish the existence of that agreement,[7] and the proposed Second Amended Complaint provides no details regarding the alleged agreement. To the extent that Plaintiff argues that the 1994 "negotiated deal" constitutes an allegation of state

---

[7]   *See Moral v. Babcock*, No. 09-1230-EFM, 2010 WL 3199634, at *7 (D. Kan. Aug. 12, 2010) (citation omitted); *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983); *Aly v. Rocky Mountain Holding, LLC*, No. 98-2273, 2000 WL 18878, at *4-5 (10th Cir. Jan. 12, 2000); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994).

action sufficient to support his Section 1983 and 1985 claims premised on Defendants' actions of obstructing the C-53-B road and impeding Plaintiff's rights of way, the Court concludes that the allegations regarding a 1994 agreement between the County and Defendants to stop maintaining the road do not establish that the County acted willfully and jointly with Defendants to obstruct the road or deprive Plaintiff of his rights of access to his property and the church.   Specifically, the proposed amendment does not satisfy the conspiracy approach to the joint action test, because the failure to maintain the road is not linked to the alleged "common, unconstitutional goal" of obstructing the C-53-B road and impeding Plaintiff's access to his property and the church.   *Cf. Gallagher*, 49 F.3d at 1454.   The proposed amendment likewise does not satisfy the cooperation approach, because the failure to maintain the road does establish a "substantial degree of cooperative action between state and private officials" or "overt and significant state participation[]" in obstructing the road and impeding Plaintiff's right of access.   *Cf. id.* at 1453-54.

Plaintiff's proposed allegation that the County was aware of Defendants' actions of obstructing Plaintiff's access to his property and yet did nothing to remove the blockages, *see id.* ¶ 40, at 8 (alleging that Defendants' action of "land-locking [Plaintiff] is fairly attributable to the County because the County was aware that the County road was blocked" and that county officials "saw the blocked county road in Sept. 2009, but yet did nothing to remove the blockages") (emphasis omitted), likewise does not satisfy the joint action test.   The fact that the County may have been aware of Defendants' actions of blocking Plaintiff's access to his property and the church is not sufficient to establish that the County shared a common goal with Defendants to impede Plaintiff's ingress and egress to and from his property and the church, or that there was a "substantial degree of cooperative action between state and private officials" or "overt and

significant state participation[] in carrying out the deprivation of the plaintiff's constitutional rights." *Gallagher*, 49 F.3d at 1453-54. "[T]he mere acquiescence of a state official in the actions of a private party is not sufficient" to establish state action. *See Gallagher*, 49 F.3d at 1453; *Wittner*, 720 F.3d at 777; *Moral*, 2010 WL 3199634, at *7. Thus, Plaintiff cannot satisfy the joint action test by virtue of the fact that the County knew of Defendants' actions to obstruct the road and nonetheless failed to remove the blockages.

Plaintiff's proposed allegations suggesting that Defendants' obstruction of the C-53-B road constitutes state action because the County's decision to vacate the road caused Defendants to believe the road reverted to their private ownership and that they could impede Plaintiff's access to his landlocked property and to the church and surrounding cemetery, *see* Second Am. Compl. ¶ 50, at 9; *id.* ¶ 94, at 17; *id.* ¶ 51, at 9; *id.* ¶ 103, at 18; *id.* ¶ 61, at 11; *id.* ¶ 63, at 11; *id.* ¶ 48, at 9, likewise fail to satisfy the joint action test. The joint action test requires that the State willfully acted in concert with a private party to deprive a plaintiff of his or her constitutional rights. *See Gallagher*, 49 F.3d at 1453. Plaintiff did not have a constitutional property right in the County's maintenance of the C-53-B road as a county road, *see supra* note 4, and thus even if the Court assumes that the County and Defendants did conspire to vacate the road, the vacation of the road did not deprive Plaintiff of any constitutional right. Thus, the mere fact that the State acted in concert with Defendants in vacating the road cannot alone establish that the State willfully acted in concert with Defendants to violate Plaintiff's constitutional rights by obstructing the road and impeding Plaintiff's access. Furthermore, the act of vacating the road alone does not establish that the County and Defendants shared a common goal of obstructing Plaintiff's right to access his property, that the Defendants had a substantial degree of cooperation from the State in obstructing the road and impeding Plaintiff's access to his property, or that the State overtly and actively

32

participated in Defendants' actions of obstructing the road and impeding Plaintiff's access.   *Cf.* *Gallagher*, 49 F.3d at 1454.   Finally, as discussed, the "mere acquiescence of a state official in the actions of a private party is not sufficient" to establish state action, *see id.* at 1453; *Wittner*, 720 F.3d at 777; *Moral*, 2010 WL 3199634, at *7, and thus the County's agreement or approval of vacating the road cannot satisfy the joint action test for this reason as well.   For all of these reasons, the proposed allegations regarding the vacation of the road are not sufficient to satisfy the joint action test.

The proposed Second Amended Complaint further alleges that Defendants' action of barring access to the catholic church and cemetery constitutes state action, because the County Attorney suggested in his letter dated September 22, 2010, that "'[t]he Archdiocese of Santa Fe, and persons who have over the years utilized the road to visit the church and cemetery, may also have an interest in asserting a private easement.'"   *Id.* ¶ 60, at 11 (quoting Sept. 22, 2009, Letter from Jesus L. Lopez, County Attorney, to Les Montoya, County Manager, at 2-3, attached as Exh. 11 to Second Am. Compl.).   Plaintiff alleges, "The county attorney fully knows that case law/common law provides that state roads or county roads have public easement.   The county attorney was covertly attempting to get the plaintiff, the Archdioceses [sic], and others to apply for private easements which would then by law nullify the public prescriptive easement in the area."   *Id*.   The Plaintiff also alleges, "[T]he county . . . intentionally significantly aided the defendants in their quest to extinguish the long standing public easement and right of way" to the church and cemetery.   *Id.* ¶ 79, at 14.   Even if the County worked with Defendants to extinguish a public easement, this act does not establish that the County and Defendants shared a common unconstitutional goal of obstructing the C-53-B road and impeding Plaintiff's entry and exit from his property or the church.   *Cf. Gallagher*, 49 F.3d at 1454.   Thus, the proposed amendment does

not satisfy the joint action test.

For the foregoing reasons, Plaintiff's proposed allegations related to state action do not satisfy the second *Lugar* condition that the private party charged with the deprivation "must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. Because the allegations do not cure the defects of the Section 1983 and 1985 claims asserted in the First Amended Complaint and because the claims proposed in the Second Amended Complaint would be subject to dismissal for the same reasons the Court dismissed those claims in the First Amended Complaint, the Court concludes that the proposed amendment is futile. *Cf. TV Comm. Network, Inc. v. Turner Network Tel., Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (an amendment is "futile" if the pleading as amended, would be subject to dismissal), *cert. denied*, 506 U.S. 999 (1992).

> 2.     Addition of New Claims Premised on the May 20, 2013, Application for Restraining Order.

The proposed Second Amended Complaint adds new Section 1983 and 1985 counts premised on Defendants' filing of their May 20, 2013, Application for Restraining Order in the First Judicial District Court, State of New Mexico. *See* Second Am. Compl. ¶¶ 111-23; *id*. Exh. 14. Defendants argue that these claims are futile because the facts alleged do not establish state action. *See* Resp. to Mot. to File Second Am. Compl. at 9-10.[8]

To sustain his claims premised upon Defendants' filing of the Application for Restraining Order, Plaintiff must allege facts indicating that Defendants' conduct is 'fairly attributable to the State.'" *Anderson v. Kitchen*, No. 09-4229, 2010 WL 2982930, *2 (10th Cir.

---

[8]   Defendants also argue that Plaintiff's proposed claims are futile because they seek to overturn a state court order and therefore are barred by the *Rooker-Feldman* doctrine. *See* Resp. to Mot. to File Second Am. Compl. at 9-10. Because the Court agrees with Defendants' argument that Plaintiff has not alleged facts demonstrating that Defendants were state actors, and this conclusion is dispositive, the Court need not—and therefore does not—decide the question whether Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

July 30, 2010) (quoting *Lugar*, 457 U.S. at 937) (additional citation omitted).   Plaintiff may satisfy this requirement by alleging plausible facts that establish the two *Lugar* conditions.   *See Lugar*, 457 U.S. at 937.   The Court concludes that Plaintiff's proposed amendment does not satisfy the second *Lugar* condition that the private party charged with the deprivation was "a person who may fairly be said to be a state actor," or otherwise establish that the Defendants' conduct is fairly attributable to the State.[9]   *Id.*

The allegations alleged in support of the claim premised on the filing of the Application for Restraining Order do not satisfy any of the four tests used to determine whether a private actor may fairly be held accountable as a state actor, *see Johnson v. Rodrigues*, 293 F.3d 1196, 1202-03 (10th Cir. 2002) (citation omitted), or otherwise demonstrate that Defendants' conduct is fairly attributable to the State, *cf. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (the ultimate inquiry remains whether the private party's behavior "may be fairly treated as that of the State itself"); *accord Johnson*, 293 F.3d at 1206 (citation omitted).   The facts Plaintiff adds do not establish that New Mexico delegated any public function to Defendants, *cf. Johnson*, 293 F.3d at 1203, do not demonstrate that a close nexus existed between Defendants and the State by virtue of the fact that a state official encouraged or coerced Defendants to take the action of filing their Application for Restraining Order, *cf. id.*, and do not suggest a symbiotic relationship between Defendants and the State, evidenced by the fact that the state court "so far insinuated itself into a position of interdependence" with Defendants or that there was an otherwise close, mutually-beneficial, interdependent relationship between the state court and Defendants, *cf. id.* at 1204-05.   Although Plaintiff alleges that Defendants "received significant

---

[9]   Because this holding alone renders Plaintiff's proposed amendment futile, the Court need not determine whether the proposed amendment satisfies the first *Lugar* condition.

aid from the state," *id.* ¶ 145, at 23, and that the "symbiotic relationship, [and] close nexus[] with the state aided the defendants," *id.* ¶ 146, at 23, conclusory allegations such as these are not sufficient to withstand a motion to dismiss.   *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The proposed allegations likewise do not satisfy the joint action test.   *See Gallagher*, 49 F.3d at 1453-54.   The mere fact that private parties such as Defendants file a lawsuit and avail themselves of the State's legal system does not alone constitute state action.   *See Anderson*, 2010 WL 2982930, at *2; *Dickerson v. Leavitt Rentals*, 995 F. Supp. 1242 (D. Kan.) (citation omitted), *aff'd*, 153 F.3d 726 (10th Cir. 1998).   Rather, a plaintiff must allege facts indicating that the state court substantially cooperated with the private actors to deprive the plaintiff of his or her constitutional rights.   *See Wideman v. Garcia*, No. 08-CV-00966-MSK-MJW, 2009 WL 2809419, at *3 (D. Colo. Aug. 28, 2009) ("a State must have actively and significantly cooperated with the defendant" to satisfy the joint action test), *aff'd*, No. 09-1433, 2010 WL 2382454 (10th Cir. June 14, 2010).

The proposed Second Amended Complaint alleges no such facts.   Plaintiff only alleges that Defendants obtained the restraining order by "using false testimony and the defendants thus acted under 'color of state law,'" *id.* ¶ 139, at 23 (emphasis omitted), that the state court wrongfully entered the order, that the order exceeded the scope of the Application for Restraining Order, that the order violates Plaintiff's federal constitutional and statutory rights, *see id.* ¶ 116, at 19; *id.* ¶ 117, at 20; *id.* ¶ 135, at 22; *id.* ¶ 137, at 22; *id.* ¶ 138, at 22, and that Defendants acted "in conjunction with the state," *id.* ¶¶ 120, 127, 148, at 20, 23.   These facts are deficient for several reasons.

First, allegations of false testimony by private litigants are not sufficient to establish the cooperation of the state court.   *See Anderson*, 2010 WL 2982930, at *2 (holding that private

36

defendants did not engage in joint action with the judge simply because they misled the judge). Second, allegations that a state court wrongly entered an order are not sufficient to establish cooperation or conspiracy.  "Merely because an outcome is unfavorable to a plaintiff does not mean that the tribunal has cooperated or conspired with the opposing party."  *Wideman*, 2009 WL 2809419 at *3.  To the contrary, it is well established that the mere acquiescence of a state court in the actions of a private party is not sufficient to establish state action.  *See Anderson*, 2010 WL 2982930, at *1-2 (holding that defendants who had filed a state-court eviction proceeding against a plaintiff were not state actors for purposes of the plaintiff's subsequent Section 1983 claim alleging that the defendants wrongfully procured a state court eviction order, and explaining that the plaintiff's Section 1983 claim failed to satisfy the second *Lugar* condition, because "the mere acquiescence of a state official in the actions of a private party is not sufficient" to establish state action) (citation omitted); *see also Gallagher*, 49 F.3d at 1453; *Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013); *Moral v. Babcock*, No. 09-1230-EFM, 2010 WL 3199634, at *7 (D. Kan. Aug. 12, 2010).  Third, to the extent Plaintiff's allegation that Defendants acted in conjunction with the State, *see id.* ¶¶ 120, 127, 148, at 20, 23, constitutes a claim that the state court conspired with Defendants, this allegation of conspiracy, unsupported by any additional facts showing agreement or concerted action, is insufficient to hold the State accountable for Defendants' actions of filing suit.  *See Anderson*, 2010 WL 2982930, at *3 (rejecting the plaintiff's argument that he established state action because his complaint alleged that defendants acted in collusion with the state court judge, because "'[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient'") (quoting *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000)).

To withstand a motion to dismiss, Plaintiff's proposed Section 1983 and 1985 claims must allege facts establishing that Defendants were state actors.   *See supra* § II.A.2.   Plaintiff's proposed Second Amended Complaint—like his First Amended Complaint—does not allege facts establishing state action.   The proposed claims do not satisfy any of the four tests to hold the State responsible for the actions of private parties, *cf. Johnson v. Rodrigues*, 293 F.3d 1196, 1202-03 (10th Cir. 2002) (citation omitted), or otherwise demonstrate that Defendants' conduct is fairly attributable to the State, *cf. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001); *Johnson*, 293 F.3d at 1206 (citation omitted).   Thus, Plaintiff's proposed Second Amended Complaint is subject to dismissal and is therefore futile.   Accordingly, the Court denies Plaintiff's Motion to File Second Amended Complaint.   *Cf. TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (an amendment is "futile" if the pleading as amended, would be subject to dismissal), *cert. denied*, 506 U.S. 999 (1992); *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.*, 175 F.3d 848, 859 (10th Cir. 1999) (a court may deny leave to amend where the proposed "amendment would be futile").

B.      Plaintiff's Proposed Amendment is Not Dilatory, Prejudicial, or in Bad Faith.

Defendants also contend that the Court should deny Plaintiff's Motion to File Second Amended Complaint on the ground that Plaintiff seeks amendment in bad faith for dilatory purposes.   A court may deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed."   *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993). Furthermore, a court may "properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to

38

knowingly delay raising an issue until the eve of trial." *Minter*, 451 F.3d at 1206 (citations omitted).

Because the Court already has denied Plaintiff's Motion to File Second Amended Complaint on the ground that the proposed amendment is futile, the Court need not decide whether Defendants' second argument that Plaintiff seeks amendment in bad faith for dilatory purposes has merit.   Although the Court need not consider the issue, the Court notes that—at least with respect to Plaintiff's proposed amendment adding facts relevant to state action—Plaintiff does not appear to be using Rule 15 for an improper purpose.   Plaintiff seeks to add support to existing claims and not to make the complaint a moving target or add a new theory of recovery.   *Cf. id.*   Moreover, the litigation is still in its early stages and Plaintiff is not bringing his claims on the eve of trial. The Court therefore is not persuaded by Defendants' argument that Plaintiff seeks to amend his pleading in bad faith for a dilatory purpose.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Doc. 12] will be denied; Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Doc. 18] will be granted; and Plaintiff's Motion for Leave to File a Second Amended Complaint and Memorandum of Law in Support [Doc. 25] will be denied.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Doc. 12] be and hereby is **DENIED**; that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Doc. 18] be and hereby is **GRANTED**; and that

Plaintiff's Motion for Leave to File a Second Amended Complaint and Memorandum of Law in

Support [Doc. 25] be and hereby is **DENIED.**

      SO ORDERED this 11th day of March, 2014.


                              _____

                              M. CHRISTINA ARMIJO
                              Chief United States District Judge